1  **WO**

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                      FOR THE DISTRICT OF ARIZONA

9

10  UNITED TRUCK & EQUIPMENT, INC.,)        No. CV08-01046-PHX-GMS
    Arizona corporation,                  )
11                                         )        **ORDER**
                    Plaintiff,             )
12                                         )
    vs.                                    )
13                                         )
                                           )
14  CURRY  SUPPLY  CO.,  a  Pennsylvania)
    corporation;    and    CHRISTOPHER)
15  RITCHEY,                               )
                                           )
16                  Defendants.            )
                                           )
17  _____ )

18        Pending before the Court is the Motion to Dismiss, or in the Alternative, to Transfer

19  of Defendants Curry Supply Co. and Christopher Ritchey. (Dkt. # 17.)  Plaintiff, United

20  Truck & Equipment, Inc., filed a response.  (Dkt. # 20.)  Defendants replied.  (Dkt. # 24.)

21  For the reasons set forth below, the Court denies Defendants' motion to dismiss and grants

22  Defendants' motion to transfer.

23                          **BACKGROUND**[1]

24        Plaintiff United Truck & Equipment, Inc. ("United") is an Arizona corporation with

25  its principal place of business in Phoenix, Arizona.   United's business involves the

26  _____

27        [1]The facts included are derived from the Verified Complaint of Plaintiff (Dkt. # 1),
    the Declaration of Larry Trauscht, President of United Truck & Equipment (Dkt. # 21), and
28  the Declaration of Christopher Ritchey, President of Curry Supply (Dkt. # 17, Ex. 2).

manufacture, sale and distribution of water tank systems.  United advertises and promotes its products throughout the United States under two trademarks – UNITED TRUCK & EQUIPMENT and "U and design."  The UNITED TRUCK & EQUIPMENT common law mark has been in use since 1968 and the "U and design" mark has been in use since 1995. The "U and design" mark was registered with the U.S. Patent and Trademark Office on April 6, 2004.

Defendant, Curry Supply Co. ("Curry"), is a Pennsylvania corporation with its principal place of business in Curryville, Pennsylvania.  Defendant Christopher Ritchey is an employee and the president of Curry.  Curry's business involves representing manufacturers and wholesalers of products and selling certain types of trucks and component parts, including water tank systems.  Curry maintains a website that provides email and toll-free telephone contact information and on which customers have the ability to apply for financing.

Although United and Curry never engaged in written sales contracts or exclusivity agreements of any kind, they did maintain a business relationship for the fourteen years leading up to the filing of this suit.  During that period, Curry purchased hundreds of water tanks and numerous parts from United.  In his declaration, Larry Trauscht, President of United, stated, "During years of business relationship [sic] between the parties, Curry [] engaged in the following transactions with United:  a. during the last five years only, purchased [over eleven hundred] parts from United in Arizona [which totaled $1,411,166.55;] b. purchased nineteen (19) water tanks from Plaintiff in Arizona and shipped 19 trucks to Arizona to have United tanks installed on those trucks; c. purchased 95 tanks and kits from Arizona to be delivered to Curry's customers; d. shipped to United 12 trucks bought by customers from Curry; e. placed and received countless calls and engaged in correspondence with United."  (Dkt. # 21, at ¶ 4.)

Outside of this relationship, Curry's contacts with Arizona are minimal.  With the exception of two minor occurrences, Curry has not sold any products to Arizona corporations or customers or generated any revenue from business activity in the state. In 2007, Curry sold

1   two water tanks manufactured in Pennsylvania to a company in West Virginia.   That

2   company requested that the water tanks be delivered to a facility in Arizona.  In 2001, United

3   paid Curry $650.00 to deliver a water truck from Curryville, Pennsylvania, to Flushing, New

4   York.  Curry maintains no offices, employees, bank accounts, telephone numbers, or Post

5   Office boxes in Arizona.  Curry is not registered to conduct business in Arizona, does not

6   own or lease any property in Arizona, has not designated an agent for service of process in

7   Arizona, and has never paid or filed tax returns in Arizona.

8        In 2002, United developed, produced and distributed a high-quality color catalog

9   ("2002 Catalog") to advertise its products on a worldwide scale.  The 2002 Catalog is

10  registered with the United States Copyright Office.  In 2008, United discovered that Curry

11  and Ritchey were selling water tanks but not purchasing them from United.   Upon

12  investigation, United allegedly discovered that Curry, under the direction of Ritchey, had

13  produced a catalog which is a counterfeit of United's 2002 Catalog.  On June 3, 2008, United

14  filed a complaint against Curry and Ritchey in the United States District Court for the District

15  of Arizona. In its Complaint, United  asserts:

16          Defendants have printed and distributed a product catalog
    that replicates the exact text and layout of the United 2002
17  Catalog with only minor and insignificant changes (the
    "Infringing Catalog").  In the Infringing Catalog, Defendants
18  have removed United's registered and unregistered trademarks
    from the water tanks appearing in photographs and the
19  background of various photographs.  Defendants have replaced
    United's registered trademark with Defendant's trademark on
20  the cover and every page of the Infringing Catalog.  Defendants
    have blurred certain photographs in the Infringing Catalog to
21  remove or distort background details that identify United.  In the
    Infringing Catalog, Defendants have removed United's
22  copyright notice and adopted United's Commitment to Quality,
    replacing "United Truck and Equipment" with "Curry Supply."
23  Defendants have marketed their water tanks to United's
    customers and to the general public by stating that Defendant's
24  water tanks are the same water tanks as those offered by United.
    Defendants are using the Infringing Catalog to offer for sale
25  products that compete with United's products, wrongfully using
    the United 2002 Catalog in a manner likely to confuse the public
26  as to the source of their products.

27  (Dkt. # 1, at ¶ 2.)

28

United asserted six claims against Curry and Ritchey, including: (1) false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) copyright infringement under the federal Copyright Act, 17 U.S.C. §106 ; (3) trademark infringement and unfair competition under the Lanham Act; (4) unfair competition under Arizona Law; (5) unjust enrichment/restitution; and (6) consumer fraud and false advertising under Arizona law, A.R.S. § 44-1421.  (Dkt. # 1, at ¶¶ 23-53.)  On July 16, 2008, Defendants filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  Should the Court determine personal jurisdiction in Arizona is proper, Defendants also move to dismiss the entire Complaint for improper venue pursuant to Rule 12(b)(3) or counts 1, 3-6 for failure to state a claim under Rule 12(b)(6).  Alternatively, Defendants request a transfer of venue to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404.

## DISCUSSION

**I.     Does The United States District Court for the District of Arizona have Personal Jurisdiction over Defendants Curry and Ritchey?**

### A.     Plaintiff Bears the Burden of Proof

The plaintiff bears the burden of establishing personal jurisdiction.  *See, e.g.*, *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).  "The plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction'" over the defendant.  *Cummings v. W. Trial Lawyers Assoc.*, 133 F. Supp. 2d 1144, 1151 (D. Ariz. 2001).

Because the Court is resolving the motion to dismiss without holding an evidentiary hearing, Plaintiff "need make only a *prima facie* showing of jurisdictional facts to withstand the motion."  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *see also Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir. 1989).  That is, Plaintiff "need only demonstrate facts that if true would support jurisdiction over [Defendant]."  *Ballard*, 65 F.3d at 1498; *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1085 (9th Cir. 2000) ("Where . . . the district court does not hold an evidentiary

1   hearing but rather decides the jurisdictional issue on the basis of the pleadings and supporting

2   declarations, we will presume that the facts set forth therein can be proven."). If the plaintiff

3   survives the motion to dismiss under a *prima facie* burden of proof, however, the plaintiff

4   still must prove the jurisdictional facts by a preponderance of the evidence at a preliminary

5   hearing or at trial. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.2

6   (9th Cir. 1977).

7   **B.    Substantive Personal Jurisdiction**

8        Because no applicable federal statute governing personal jurisdiction exists, Arizona's

9   long-arm statute applies to this case. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559

10  (9th Cir. 1995); Ariz. R. Civ. P. 4.2(a). Absent traditional bases for personal jurisdiction

11  (i.e., physical presence, domicile, and consent), the Due Process Clause requires that

12  nonresident defendants have certain "minimum contacts" with the forum state such that the

13  exercise of personal jurisdiction does not offend traditional notions of fair play and

14  substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

15        "In determining whether a defendant had minimum contacts with the forum state such

16  that the exercise of jurisdiction over the defendant would not offend the Due Process Clause,

17  courts focus on 'the relationship among the defendant, the forum, and the litigation.'"

18  *Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 860 (D. Ariz. 1999) (citing *Shaffer v. Heitner*,

19  433 U.S. 186, 204 (1977)). If a court determines that a defendant's contacts with the forum

20  state are sufficient to satisfy the Due Process Clause, then the court must exercise either

21  "general" or "specific" jurisdiction over the defendant. *See Helicopteros Nacionales de

22  Colombia v. Hall*, 466 U.S. 408, 414-15 nn.8-9 (1984); *Ziegler*, 64 F.3d at 473. General

23  jurisdiction refers to the authority of the court to exercise jurisdiction even where the cause

24  of action is unrelated to the defendant's contacts with the forum. *Helicopteros*, 466 U.S. at

25  408. Specific jurisdiction refers to the authority of the court to exercise jurisdiction when a

26  suit arises out of or is related to the defendant's contacts with the forum. *Id.* The nature of

27  the defendant's contacts with the forum state will determine whether the court exercises

28  general or specific jurisdiction over the defendant. *Id.*

1

### 1.    General Jurisdiction

2    A court may assert general jurisdiction over a defendant if the defendant engages in

3    "substantial" or "continuous and systematic" business activities, *Helicopteros*, 466 U.S. at

4    416 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446-47 (1952)), that

5    "approximate physical presence" in the forum state. *Bancroft*, 223 F.3d at 1087; *see also*

6    *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases where

7    general jurisdiction was denied despite defendants' significant contacts with the forum

8    state)).  Here, the Court cannot exercise general jurisdiction over the Defendants because

9    neither Curry's nor Ritchey's contacts qualify either as "substantial" or "continuous and

10    systematic" so as to approximate their physical presence in Arizona.

11    The only facts that United relies on to support its theory of general jurisdiction over

12    Curry include: (1) the business relationship during which Curry  purchased numerous

13    products from United; (2) the extensive telephone and other correspondence between Curry

14    and United; and (3)  Curry's maintenance of a website in which customers could contact the

15    company or submit finance applications. (Dkt. # 20, at 3-8.)  However, it is uncontested that

16    Curry's principal place of business is in Pennsylvania.  Curry owns no property in Arizona,

17    owes no taxes in Arizona, and maintains no offices, employees, telephone numbers, Post

18    Office boxes or bank accounts in Arizona.  Curry is not registered to conduct business in

19    Arizona and has not designated an agent for service of process in Arizona.  Additionally,

20    United does not dispute the assertion that Curry does not directly advertise to Arizona

21    residents and businesses and does not solicit sales of its products in Arizona outside of its

22    website.  The vast majority of the Arizona contacts alleged by United result from Curry

23    engaging in commerce with United which is an Arizona corporation.  Like *Helicopteros*,

24    where similar contacts were insufficient to find general jurisdiction, the Court finds Curry's

25    contacts with Arizona insufficient for it to be subject to general jurisdiction. *See Bancroft*,

26    223 F.3d at 1086 (holding that "engaging in commerce with residents of the forum state is

27    not in and of itself the kind of activity that approximates physical presence within the state's

28    border") (citation omitted).  Therefore, while Curry was clearly doing business *with* Arizona,

1   it was not doing business *in* Arizona, and so while it has "stepped through the door, there is

2   no indication that it has sat down and made itself at home."  *Glencore Grain Rotterdam B.*

3   *V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002).

4           This conclusion is not affected by the fact that Curry maintains a website.  *See GTE*

5   *New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000) (stating

6   that mere operation of an interactive website "does not by itself show any persistent course

7   of conduct by defendants in the [forum state]").  Even though Curry did maintain its website,

8   it is uncontested that Curry has not generated any sales or business activity from the state of

9   Arizona through its website.  *See Gator.Com Corp. v. L.L. Bean*, 341 F.3d 1072, 1079 (9th

10  Cir. 1997) ("This test requires both that the party in question clearly do business over the

11  Internet, and that the Internet business contacts with the forum state be substantial or

12  continuous and systematic." (citations and quotation omitted)).

13          The only fact that Plaintiff relies on in arguing that general jurisdiction is proper over

14  Ritchey is that Ritchey is President of Curry and once visited United's manufacturing

15  facilities in Arizona in the mid 1990's.  (Dkt. # 20, at 4.)  However, it is uncontested that

16  Ritchey has never personally made any sales calls into the state of Arizona for the purpose

17  of selling products, has never personally sold any products, trucks, component parts or other

18  equipment or products to any entity, business or individual in the state of Arizona, does not

19  maintain a personal website, and does not conduct any water tank, truck or truck parts

20  business as an individual.  Given the finding that general jurisdiction is lacking against

21  Curry, general jurisdiction over Ritchey is also lacking.  The Court therefore finds that

22  United has not made a *prima facie* showing of general jurisdiction against Curry or Ritchey.

23

24

25                      **2.      Specific Jurisdiction**

26          While there is no general jurisdiction over Curry or Ritchey in Arizona, United's

27  allegations are sufficient for the exercise of specific jurisdiction.  The Ninth Circuit applies

28  a three-part test to determine whether a defendant's contacts with the forum state are

sufficient to provide specific jurisdiction.  Under this three-part test, specific jurisdiction exists only if:  (1) the defendant *purposefully availed* himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directs conduct at the forum that has *effects* in the forum; (2) the claim *arises out of* the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice; i.e., it is *reasonable*.  *See, e.g.*, *Bancroft*, 223 F.3d at 1086 (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985).  The plaintiff bears the burden of satisfying the first two prongs of the test.  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.  *Burger King*, 471 U.S. at 472-78.

### a.  "Purposeful Availment" and "Effects" Tests

In discussing specific jurisdiction, the United States Supreme Court emphasized long ago that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  More recently, the Supreme Court held that a court may also have specific jurisdiction over a defendant where the intended effects of the defendant's non-forum conduct were purposely directed at and caused harm in the forum state.  *Calder v. Jones*, 465 U.S. 783, 788-90 (1984); *see also Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988) ("[T]he decisions of this court have interpreted the holdings of *Calder* and *Burger King* as modifying the purposeful availment rubric to allow 'the exercise of jurisdiction over a defendant whose only contact with the forum is the purposeful direction of a *foreign* act having *effect* in the forum state.'") (quoting *Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir. 1986)) (emphasis in original).

Consistent with this precedent, the Ninth Circuit has held that a district court should apply different specific jurisdiction tests to contract and tort cases.  *See Ziegler*, 64 F.3d at

473; *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (stating that in determining whether a court has specific jurisdiction over a defendant, "[i]t is important to distinguish contract from tort actions").  In cases involving certain types of torts, the Ninth Circuit has held that courts should apply the "effects" test and that "jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having an effect in, the situs state." *Ziegler*, 64 F.3d at 473; *see Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (applying the effects test because a trademark infringement and unfair competition case was akin to a tort case); *Goldberg v. Cameron*, 482 F. Supp. 2d at 1144 (applying the effects test because copyright infringement "sounds in tort").

In analyzing the "effects" test, a court applies the *Calder* test, in which the defendant must have: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Consistent with the "effects" test analysis, United argues that Defendants aimed their tortious conduct at United, and, likewise that United suffered the effect of such conduct in Arizona. *(See* Dkt. # 20, at 5; Dkt. # 1, at  ¶ 2.)  Keeping in mind that not every "foreign act with foreseeable effects" in the forum state will support a finding of specific jurisdiction, *Dole*, 303 F.3d at 1112 (citation omitted), Defendants' alleged conduct will be weighed under the *Calder* "effects" test to determine whether specific jurisdiction is proper here.

### i.      Intentional Act

In its Complaint, Plaintiff sets forth sufficient facts to establish a *prima facie* case of an intentional act on the part of Curry.  The factual allegations giving rise to the six claims center on both the copying and modification of a products catalog created by United and the manner in which Curry has advertised and sold its products.  United alleges that Curry, under the direction of Ritchey, produced a counterfeit catalog, which it copied nearly verbatim from United's 2002 Catalog.  (Dkt. # 21, ¶ 6; Dkt. # 1, ¶ 22.)  This counterfeit catalog was then used to market Curry's product line which allegedly did not include United's water tanks or products.  (Dkt. # 1, ¶¶ 16, 18.)  United also alleges that Curry both engaged in the sale of

1    United's products as its own by removing the plate with United's trademark and replacing

2    it with their own information and is engaged in selling products under the guise that its

3    products are "the same" as United's. (Dkt. # 21, ¶ 7.) Neither Curry nor Ritchey dispute any

4    of these allegations.  In his declaration, Ritchey only states that Curry "never shipped any

5    catalogues to Arizona businesses or used the catalogues to encourage sales in Arizona."

6    (Dkt. # 17, Ex. 2, ¶ 13.)  Plaintiff's allegations are sufficient as to the intentional act

7    requirement.

8                          **ii.    Expressly Aimed at the Forum State**

9            The next question is whether Curry's *intentional acts*, i.e., the trademark violations,

10   copyright infringement, unfair competition, and false advertising, were expressly aimed at

11   Arizona.[2]  This issue was clarified by the Ninth Circuit in *Schwarzenegger v. Fred Martin*

12   *Motor Co.*, 374 F.3d 797 (9th Cir. 2004).  In *Schwarzenegger*, Arnold Schwarzenegger filed

13   suit in California against an Ohio car dealership for the unauthorized use of his photograph

14   in its advertisements.  The Ninth Circuit concluded that the federal court in California did not

15   have specific jurisdiction over the Ohio dealership because, under the effects test, it could

16   not be said that the dealership had purposefully directed its actions at California since the

17   dealership's advertisements were targeted solely at Ohio consumers:

18                  Schwarzenegger does not point to any conduct by Fred Martin
                    in California related to the Advertisement that would be readily
19                  susceptible to a purposeful availment analysis.  Rather, the
                    conduct of which Schwarzenegger complains – the unauthorized
20                  inclusion of the photograph in the Advertisement and its
                    distribution in the Akron Beacon Journal – took place in Ohio,
21                  not California.  Fred Martin received no benefit, privilege, or
                    protection from California in connection with the
22                  Advertisement, and the traditional quid pro quo justification for
                    finding purposeful availment thus does not apply.  Therefore, to
23                  the extent that Fred Martin's conduct might justify the exercise
                    of personal jurisdiction in California, that conduct must have
24                  been purposefully directed at California.

25   _____

26        [2] Whether Curry's web page directed its business at Arizona, or resulted in business
     in Arizona, may be relevant to the context of general jurisdiction, but it is not relevant to the
27   intentional acts giving rise to this suit as those acts existed outside of the context of the
28   Internet.

1    *Id.* at 803.  The Ninth Circuit has made it clear that any intentional conduct "must be targeted

2    at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft*, 223

3    F.3d at 1087; *see also Goldberg*, 482 F. Supp. 2d at 1146 (holding that defendants who

4    willfully infringed plaintiff's copyright and who acted with the intent to produce movies for

5    worldwide distribution, including in the forum state, sufficiently satisfied the purposeful

6    direction requirement); *Panavision*, 141 F.3d at 1322 (holding that a defendant who

7    "engaged in a scheme to register Panavision's trademarks as his domain names for the

8    purpose of extorting money from Panavision" was enough to "demonstrat[e] that the

9    defendant directed his activity toward the forum state).

10                              **(a)   Curry Supply**

11            In the present case the parties include two business organizations who have had some

12   sort of business relationship for fourteen years, and who now have become competitors in

13   the water tank business.  Curry undoubtedly knew of the nature, location, and geographical

14   scope of United's business when it engaged in the alleged intentional conduct that is the

15   subject of this suit.  Even accepting as true the facts that Curry has never shipped any

16   catalogs to Arizona businesses, has never used the catalogs to encourage sales in Arizona,

17   does not directly advertise to Arizona residents and businesses, does not solicit sales of its

18   products in Arizona, and has not sold its products to Arizona customers, the confluence of

19   the other factors mentioned above indicate that Curry purposely directed its actions at the

20   state of Arizona.  *See, e.g.*, *Columbia Pictures Television v. Krypton Broad. of Birmingham,*

21   *Inc.*, 106 F.3d 288, 289 (9th Cir. 1997), *overruled on other grounds by Feltner v. Columbia*

22   *Pictures Television*, 523 U.S. 340 (1998) (finding that the purposeful availment requirement

23   of the specific jurisdiction test was satisfied when the defendant had willfully infringed

24   copyrights owned by the plaintiff and knew that the plaintiff had its principal place of

25   business in the forum state); *Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d

26   1135, 1140-41 (N.D. Cal. 2005) (finding that the plaintiff "has satisfied the

27   effects/purposeful direction test by first, making a *prima facie* showing that [defendant]

28   willfully infringed copyrights . . . and second, alleging without dispute . . . that [defendant]

knew [plaintiff's] principal place of business was in the [forum]."); *The Bear Mill, Inc. v. Teddy Mountain, Inc.*, No. 07-492, 2008 WL 2323483, at *6 (D. Idaho May 7, 2008) (finding, in a trademark action, that "[t]he fact that the parties are competitors in the teddy bear and franchise business, coupled with Defendant's knowledge of the location of Plaintiffs' business" satisfies the "effects" test); *Precision Craft Log Structures, Inc. v. Cabin Kit Co.*, No. 05-199, 2006 WL 538819, at *7 (D. Idaho Mar. 3, 2006) (finding that because the parties were competitors and both parties sell throughout the United States, the defendant's "alleged intentional actions were expressly aimed or directed at the forum state and caused harm which the defendant knew would be suffered in the forum state where Precision Craft had its principal place of business").

The Court is persuaded by the reasoning in *Bear Mill* and *Precision Craft*. The current suit between the parties has not arisen in a factual vacuum. For years prior to this lawsuit, United and Curry engaged in a business relationship. This history combined with the current allegations of competition between the parties distinguish this case from *Schwarzenegger,* in which the parties had no history of dealing or particularized knowledge about the other's business. In *Schwarzenegger*, there was no competitive nationwide business in which both Schwarzenegger and Fred Martin Motor engaged. Rather, like *Bear Mill* and *Precision Craft*, in which the existence of a competitive relationship and particularized knowledge regarding the other parties led to a finding of purposeful availment, this Court finds that the competitive relationship between the parties and Curry's knowledge of the nature, scope, and location of United's operations leads to the conclusion that Curry purposefully directed its intentional acts at the state of Arizona. Therefore, Curry could reasonably anticipate being haled into court here.

### (b)    Christopher Ritchey

Defendant Ritchey is the President of Curry. He is a citizen of Pennsylvania and has substantially no personal contacts with Arizona. Ritchey contends that he therefore does not separately have sufficient contacts with Arizona to support a finding of personal jurisdiction. (Dkt. # 24, at 9.)  Ritchey acknowledges the case law rejecting the application of the

"corporate shield doctrine," which states that "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prod., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).

This doctrine does not give "automatic jurisdictional immunity to corporate agents." *Ind. Plumbing v. Standard of Lynn, Inc.*, 880 F. Supp. 743, 750 (C.D. Cal. 1995) (citing *Keeton v. Hustler Magazine*, 465 U.S. 770, 787 (1984)). It merely requires that the Court consider the extent to which the corporate agent purposefully directed his own activities at the forum state, an analysis separate yet tied to whether the company did so. If the agent is a "primary participant . . . in the alleged wrongdoing intentionally directed at [the forum state], *Id.*, or "actively and personally involved in the conduct giving rise to the claim," *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000), he may be subject to jurisdiction in the plaintiff's forum state. *See id.* (finding jurisdiction "over corporate officers who actively and personally involved themselves in conduct violating the Lanham Act, notwithstanding the fact that the defendants acted as agents when they did so.").

In this case, United's complaint alleges that Curry, of which Ritchey is the President, engaged in improper conduct comprising copyright infringement, trademark violations, and unfair competition. It further alleges that "Ritchey knowingly and personally directed the wrongful conduct." (Dkt. # 1, at ¶ 22.) In effect, then, United alleges that Ritchey advised and consented to Curry's wrongful conduct. As concluded above, Curry's conduct constituted purposeful direction. Ritchey's endorsement and direction of such conduct also constitutes his separate purposeful direction supporting personal jurisdiction.

### iii.    Causing Harm that the Defendant Knows is Likely to be Suffered in the Forum State

Because the parties are competitors to some degree, any sale facilitated by the infringed 2002 Catalog or the improper sales conduct of Curry would have the effect (direct or indirect) of injuring United in Arizona, even if the sale was not to an Arizona resident. Additionally, it is undisputed that the Defendants knew the location of United's business, as it had done business with United for fourteen years. Therefore, the final prong of the

1    "effects" test is satisfied for both Curry and Ritchey.  With all three prongs of the "effects"

2    test met, the Court finds that Curry and Ritchey purposefully directed their activities at

3    Arizona and that both parties should have reasonably anticipated being sued in Arizona.

4                        **b.      "Arising out of" Requirement**

5           The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's

6    cause of action arises out of a defendant's forum-related activities.  *See Omeluk v. Langsten*

7    *Slip & Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995).  The "arising out of" requirement

8    is met if, but for the contacts between the defendant and the forum state, the cause of action

9    would not have arisen.  *See Terracom*, 49 F.3d at 561.  In *Shute v. Carnival Cruise Lines*, the

10   Ninth Circuit reasoned that:

11                    The "but for" test is consistent with the basic function of the
                      "arising out of" requirement—it preserves the essential
12                   distinction between general and specific jurisdiction. Under this
                      test, a defendant cannot be haled into court for activities
13                   unrelated to the cause of action in the absence of a showing of
                      substantial and continuous contacts sufficient to establish
14                   general jurisdiction. . . . The "but for" test preserves the
                      requirement that there be some nexus between the cause of
15                   action and the defendant's activities in the forum.

16    897 F.2d 377, 385 (9th Cir. 1990).

17          Here, but for Curry's and Ritchey's intentional conduct, which reached into this

18   district and allegedly affected United, United's claims would not have arisen.

19

20                        **c.      "Reasonableness" Requirement**

21          An unreasonable exercise of jurisdiction violates the Due Process Clause even if the

22   "purposeful availment" and "arising out of" requirements of the specific jurisdiction test are

23   satisfied.  *See Int'l Shoe*, 326 U.S. at 316; *Ziegler*, 64 F.3d at 474-75.  A district court

24   presumes, however, that its exercise of jurisdiction over a defendant is reasonable if the first

25   two requirements of the specific jurisdiction test are met.  *See Ballard*, 65 F.3d at 1500.

26   If the first two requirements are satisfied, then the burden of proof shifts and the defendant

27   must "'present a compelling case that the presence of some other considerations would

28   render jurisdiction unreasonable.'"  *Id.* (quoting *Burger King*, 471 U.S. at 477).

1    The Ninth Circuit considers the following seven factors to determine whether the
2    exercise of specific jurisdiction over a defendant is reasonable:  (1) the extent of the
3    defendant's purposeful interjection into the forum state; (2) the burden on the defendant of
4    litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state;
5    (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial
6    resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in
7    convenient and effective relief; and (7) the existence of an alternative forum.  *See Ziegler*,
8    64 F.3d at 475 (citing *Terracom*, 49 F.3d at 561); *World-Wide Volkswagen Corp. v.*
9    *Woodson*, 444 U.S. 286, 292 (1980) (listing several of the seven factors).

10    The first factor argued by Defendants is that Defendants never purposefully
11    interjected themselves into Arizona.  The Ninth Circuit has found that "[t]he factor of
12    purposeful interjection is analogous to the purposeful direction analysis" discussed above and
13    that this factor does not weigh against jurisdiction where the court has already determined
14    that defendants purposefully directed its conduct at Arizona. *Sinatra v*, 854 F.2d at 1199; *see*
15    *also Roth*, 942 F.2d at 623 ("In light of the first prong of purposeful availment, analysis of
16    this first factor in the third prong would be redundant" and thus "there is no need to analyze
17    this first factor separately.")   As concluded above, the Defendants' conduct did constitute
18    purposeful direction and the claims against Defendants arise from this very conduct.

19    Defendants do not argue factors 2-4 and 6.  Defendants do not allege that they would
20    be burdened by defending this matter in Arizona, that any conflict exists between Arizona
21    and Pennsylvania, that Pennsylvania would have an interest in adjudicating this matter, and
22    that  Arizona is not an important forum to the Plaintiff's interest in convenient and effective
23    relief.  Plaintiff's Response notes the absence of argument on these points and argues that
24    each factor weighs in favor the reasonableness of Arizona.

25    Defendants also argue that factor 5 – the efficiency of the judicial resolution of the
26    matter – favors Defendants because a majority of the witnesses will be from the east coast
27    of the United States.  Plaintiff, however, argues that because it has the burden of proving the
28    case against Defendants, Arizona is a more or equally efficient forum for resolving this

1  matter.  Even assuming that this factor as well as the existence of an alternate forum weigh

2  in favor of Defendants, the Court finds that Defendants have failed to "'present a compelling

3  case that the presence of some other considerations would render jurisdiction unreasonable.'"

4  *Ballard*, 65 F.3d at 1500 (quoting *Burger King*, 471 U.S. at 477).

5      Accordingly, because Plaintiff's claims arise from Defendants' purposefully directed,

6  forum-related conduct, the Court denies Defendants' motion to dismiss for lack of personal

7  jurisdiction.

8  **II.     Is The United States District Court for the District of Arizona the Proper Venue?**

9      "Plaintiff has the burden of proving that venue is proper in the district in which the

10  suit was initiated."  *Hope v. Otis Elevator Co.*, 389 F. Supp. 2d 1235, 1243 (E.D. Cal. 2005)

11  (citing *Airola v. King*, 505 F. Supp. 30, 31 (D. Ariz. 1980)); *see also Piedmont Label Co. v.*

12  *Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  "'When there are . . . multiple

13  claims in an action, the plaintiff must establish that venue is proper as to each defendant and

14  as to each claim.'"  *Markel Am. Ins. Co. v. Pac. Asian Enter.*, No. 07-5749, 2008 WL

15  2951277, at *2 (N.D. Cal. July 28, 2008) (quoting *Multimin USA, Inc. v. Walco Int'l, Inc.*,

16  No. 06-0226, 2006 WL 1046964, at *2 (E.D. Cal. Apr. 22, 2006)); *see also* 14 D. Wright,

17  A. Miller & E. Cooper, Federal Practice & Procedure § 3808 n.1 (3d ed. 2007) (citing cases

18  in which the general rule is that venue must be proper for each claim).  When deciding a

19  challenge to venue, the pleadings need not be accepted as true, and the district court may

20  consider facts outside of the pleadings.  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324

21  (9th Cir. 1996).  The trial court must "draw all reasonable inferences in favor of the non-

22  moving party and resolve all factual conflicts in favor of the non-moving party."  *Murphy v.*

23  *Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138-39 (9th Cir. 2003).

24      Plaintiff argues that venue is appropriate in this district under 28 U.S.C. § 1391(c).

25  Defendants claim venue is improper in Arizona under 28 U.S.C. § 1391(b)-(c).  The parties

26  also dispute the applicability of 28 U.S.C. § 1400(a) to this case.  The Court will address

27  each in turn.

28      **A.     28 U.S.C. § 1400(a)**

1      The general federal statute governing venue in an action wherein jurisdiction is not

2 founded solely on diversity of citizenship applies in all cases "except as otherwise provided

3 by law."[3]  28 U.S.C. § 1391(b).  One such exception is set forth in 28 U.S.C. § 1400(a).

4 Section 1400(a) states, "Civil actions, suits or proceedings arising under any Act of Congress

5 relating to copyrights . . . may be instituted in the district in which the defendant or his agent

6 resides or may be found."  The Ninth Circuit has interpreted the statute to mean that venue

7 "is proper in any judicial district in which the defendant would be amenable to personal

8 jurisdiction if the district were a separate state."  *Columbia Pictures*, 106 F.3d at 288.

9      Therefore, because the United States District Court for the District of Arizona covers

10 the entire state, a Defendant may be "found" here as long as personal jurisdiction is proper

11 within Arizona.  The Court has found personal jurisdiction proper in Arizona for both Curry

12 and Ritchey.  Therefore, under section 1400(a), this Court is the proper venue for Plaintiff's

13 second claim – federal copyright infringement.[4]

14 _____

15     [3]This Court has subject matter jurisdiction under 28 U.S.C. §1331, as the case includes

16 claims arising under the federal law.  Because this case is not founded solely on diversity of
citizenship, 28 U.S.C. § 1391(b) applies.

17     [4]Even though Defendants are subject to personal jurisdiction in this district, Plaintiff

18 still must demonstrate that venue here is proper for its non-copyright claims.

19         On occasion, where venue exists for the principal cause of

20         action, courts have agreed to adjudicate closely related claims
        even if they lacked an independent source of venue.  The

21         rationale for this 'pendent venue' theory is that it is more

22         efficient for one court to adjudicate all claims involving
        substantially the same proofs.

23

24 *Save Our Cumberland Mountains, Inc. v. Clark*, 725 F.2d 1422, 1431 (D.C. Cir. 1984)
(citations omitted).  The Court is unaware of even one  federal case where a court which has

25 an independent basis for federal copyright claims used the "pendent venue" doctrine to retain
federal or state trademark claims that did not have an independent basis for venue.  *See*

26 *Shari's Berries Intern., Inc. v. Mansonhing*, No. 06-0768, 2006 WL 2382263 (E.D. Cal. Aug.
17, 2006) (declining to utilize "pendant venue" over federal and state trademark claims

27 where venue may have been proper only for copyright claims because trademark

28 infringement and copyright infringement "are not so closely related that they justify adoption

1

### B.   28 U.S.C. § 1391(b)-(c)

2       Despite venue being proper for United's federal copyright claim, there must be an

3   independent basis for venue with respect to United's federal trademark claims and derivative

4   state claims – claims 1 and 3-6.  *See Markel*, 2008 WL 2951277, at *2.  Because no

5   exception applies governing venue over trademark claims, provisions of the general venue

6   statute apply.  28 U.S.C. § 1391(b) states:

7                A civil action wherein jurisdiction is not founded solely on
                 diversity of citizenship may, except as otherwise provided by
8                law, be brought only in (1) a judicial district where any
                 defendant resides, if all defendants reside in the same State, (2)
9                a judicial district in which a substantial part of the events or
                 omissions giving rise to the claim occurred . . . or (3) a judicial
10               district in which any defendant may be found, if there is no
                 district in which the action may otherwise be brought.
11
    Therefore, in this case, venue will be proper either if both Curry and Ritchey reside in
12
    Arizona ("option (1)") or if a "substantial part of the events or omissions giving rise to the
13
    [non-copyright] claims" occurred in Arizona ("option (2)").[5]
14
                 ### 1.   Option (1)
15
16      For purposes of venue under § 1391, 28 U.S.C. § 1391(c) establishes that a

17  corporation is considered a resident of any judicial district in which it is subject to personal

18  jurisdiction.[6] Because the Court has determined that Curry is subject to personal jurisdiction

19  in Arizona, Curry will be considered to be a state resident for purposes of venue under §

20  1391(b).  However, this is unavailing as venue is proper under option (1) only if all

21  _____

22  of a pendent venue theory") This Court likewise declines to apply "pendent venue" to
    United's non-copyright claims.

23      [5]The third prong ("option (3)") does not apply in this case as it requires a situation in
24  which venue cannot be properly found based on options (1) or (2).  This case does not
    present such a situation.
25
        [6]During oral argument, Plaintiff contended that 28 U.S.C. § 1391(c) permits venue in
26  a judicial district in which a corporate defendant is subject to personal jurisdiction.  While
    § 1391(c) does permit the Court to treat Curry as a resident of Arizona for purposes of §
27  1391(b), it does not provide an independent basis for venue.  The Court must still look to the
28  options outlined in § 1391(b) to see if venue is proper.

defendants reside in the same State.  Because Ritchey does not reside in Arizona, despite the Court's personal jurisdiction over him,[7] venue is not proper under option (1).

### 2.    Option (2)

Venue is proper under option (2) in any district "in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. §1391(b)(2).  In a trademark suit brought under the Lanham Act, a "substantial part" of the events giving rise to the claims occur in any district where consumers are likely to be confused by the accused goods, "whether that occurs solely in one district or in many."  *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994); *see also Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) ("The place where the alleged passing off occurred . . . provides an obvious correct venue."); *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956) ("[I]n cases involving trademark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's.").

---

[7]The policy consideration behind personal jurisdiction and venue are different:

> The personal jurisdiction test of minimum contacts is based on the minimum amount of fairness required to comport with due process.  Under such an analysis a defendant may be haled into a distant court to allow a state to protect its interests and the interests of the plaintiffs so long as doing so is fair and does not deny the defendant due process of law.  The convenience of the location is not determinative.  In contrast, Congress added venue limitations to insure a defendant a fair location for trial and to protect him from the risk a plaintiff will select an unfair or inconvenient place for trial.  Venue is a privilege Congress gave defendants primarily as a matter of convenience.

*Holder Corp. v. Main Street Distrib., Inc.*, No. 86-1285, 1987 WL 14339, at *4 (D. Ariz. Jan. 16, 1987) (citing *Johnson Creative Arts v. Wool Masters*, 743 F.2d 947, 949-52 (1st Cir. 1984); *Honda Assoc., Inc. v. Nozawa Trading, Inc.*, 374 F. Supp. 886, 889 (S.D. N.Y. 1974)).

In the Complaint, United alleges a variety of improper conduct on the part of Curry and Ritchey.  However, United fails to show that *any* of the events or actions giving rise to the claims in this case occurred in Arizona.[8]  It is undisputed that Curry has never shipped any catalogs to Arizona businesses or used the catalogs to encourage business in Arizona. Curry does not advertise to Arizona residents or businesses and does not solicit sales of its products in Arizona.  In the last eight years, Curry has not delivered any products or parts to the state of Arizona, with the exception of two water tanks in 2007 that were delivered to Arizona after being sold to a company in West Virginia.  Additionally, despite the accessibility of Curry's website in Arizona, Curry has not generated any sales or business activity from Arizona from its website.  Accordingly, the Court is unable to find any events or actions taken by Curry or Ritchey in Arizona that give rise to the current case.  Thus, there is no basis for venue under option (2).

Therefore, while this Court does have personal jurisdiction over both parties, venue is only proper for the federal copyright claim.  Accordingly, the Court must either transfer or dismiss the non-copyright claims.

---

[8]While economic harm is a necessary element of each of the trademark claims, it is not a sufficient basis for conferring venue.  The Eighth Circuit has held that suit in the district of the trademark owner's place of business or residence cannot justify a finding of proper venue only because that is the place where the "injured" trademark owner is located:

> We think it far more likely that be referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not the plaintiff. . . . [W]hile damages or potential adverse economic effect are a necessary part of a Lanham Act claim, if Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly.

*Woodke v. Dahm*, 70 F.3d 983, 985 (1995).  A contrary holding would result in venue being proper at the place of a plaintiff's residence or place of business in nearly all business tort cases solely because economic harm is suffered there – a holding that Congress seemingly rejected in its 1990 amendments to § 1391.  *See* Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5114 (amending diversity portion of statute to remove the plaintiff's residence as an independent basis for venue).

1

### C.    28 U.S.C. §§ 1404(a), 1406(a)

2      When venue is found to be improper, it is within the trial court's discretion to dismiss

3  the case or transfer it.  *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is

4  filed a case laying venue in the wrong division or district, shall dismiss, or if it be in the

5  interest of justice, transfer such case to any district or division in which it could have been

6  brought.").  Additionally, under 28 U.S.C. § 1404(a), a district court may transfer any civil

7  action to any other district or division where it might have been brought "[f]or the

8  convenience of parties and witnesses" and "in the interests of justice."  The court in *Shari's*

9  *Berries* used these two sections to confront the exact scenario currently facing this Court.

10  2006 WL 2382263.  In *Shari's Berries*, the court had determined that venue was proper for

11  the plaintiff's federal copyright infringement claim, but not for the various other claims,

12  which included trademark infringement, false designation of origin, and unfair competition.

13  *Id.* at *4.  The court therefore determined that it would be proper to transfer the plaintiff's

14  non-copyright claims to a district in which they could have been brought under section

15  1406(a).  *Id.*  The court further reasoned that, "Given that Plaintiff's non-copyright claims

16  cannot be prosecuted here [and will be transferred], both the interests of justice and judicial

17  economy militate in favor of the exercise of discretion under section 1404 to also transfer

18  Plaintiff's copyright claim, and therefore the entire action . . . to [an appropriate district]."

19  *Id.*

20      The Court is persuaded by the approach taken in *Shari's Berries*.  Like *Shari's*

21  *Berries*, this Court faces the dilemma of either dismissing United's non-copyright claims,

22  transferring United's non-copyright claims, or transferring the entire action.  Personal

23  jurisdiction would be proper in the Western District of Pennsylvania as Ritchey is a resident

24  of the state and Curry is incorporated there.  Additionally, venue would be proper as both

25  defendants "reside" in that district.  Because it is highly desirable that all of United's claims

26  are tried in a single forum and because the many of the events giving rise to those claims

27  likely occurred in the Western District of Pennsylvania, the Court will transfer the entire

28  matter to that district.

**III.    Has Plaintiff Failed to State a Claim Upon Which Relief Can Be Granted?**

In the absence of venue, this Court will not rule on Defendants' motion to dismiss claims 1 and 3-6 pursuant to Federal Rule of Civil Procedure 12(b)(6).  These matters should be considered by a court where venue is proper.

**IT IS THEREFORE ORDERED** directing the Clerk of the Court to transfer this action to the Western District of Pennsylvania.

DATED this 5th day of November, 2008.


G. Murray Snow
_____
G. Murray Snow
United States District Judge